AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, Petitioner, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—89—0529

Opinion filed March 28, 1990.—Rehearing denied May 15, 1990.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, So-

licitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Margaret Kostopulos, of Office of Chief Judge, of Chicago, for respondent Chief Judge of the Circuit Court of Cook County.

JUSTICE GREEN delivered the opinion of the court:

On June 27, 1989, proceeding pursuant to section 11(e) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1611(e)), the American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO (union), filed a petition in this court for judicial review of a decision of the Illinois State Labor Relations Board (Board) made on May 25, 1989. The decision found respondent, the Chief Judge of the Circuit Court of Cook County (employer), did not violate sections 10(a)(1) or (a)(4) of the Act (Ill. Rev. Stat. 1987, ch. 48, pars. 1610(a)(1), (a)(4)) by refusing to bargain over the reinstallation of a field-work requirement for probation officers of that court who worked with adult offenders. The employer has filed a motion, contending we lack jurisdiction because the petition for judicial review was not timely filed. We hold we do have jurisdiction, and we affirm.

These proceedings concern the actions of the union and the employer after the union filed a representation petition with the Board in June 1987 pursuant to section 9(a)(1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1609(a)(1)) seeking to become the exclusive representative of a bargaining unit composed of all the adult probation officers of the circuit court of Cook County. The Board ordered an election, which was held on November 18, 1987, at which the union prevailed. On April 27, 1988, the Board certified the union as the exclusive representative. The evidence was undisputed that the employer had refused to bargain with the union concerning a certain direction given to the probation officers in October 1987 in regard to field work they were required to perform and continued to do so up to the time of the proceedings involved here.

On January 27, 1988, the union filed an unfair labor practice charge with the Board pursuant to section 11 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1611), and then the following procedures, all in conformity to section 11, took place. A complaint was issued. A hearing was held before a hearing officer on November 17, 1988. She issued a recommended decision and order to the Board. The other parties then filed timely responses to that document, and the Board issued its decision and order on May 25, 1989. (*Cook County Circuit Court (Chief Judge)*, 5 Pub. Employee Rep. (Ill.) par. 2024, case No.

S—CA—88—83 (Illinois State Labor Relations Board, May 25, 1989).) On that date, the parties were served with notice of the decision. The Board held the only issue raised by the union concerned the duty of the employer to bargain with the union during the time frame described, and held the employer had no duty to bargain until the union was certified by the Board on April 27, 1988. On judicial review, the union maintains the Board was in error (1) in holding a duty to bargain did not exist earlier; and (2) in not considering whether the issuance of the direction to the probation officers in October 1987 was, of itself, an unfair labor practice.

First, we must decide whether we have jurisdiction to decide this case. As we have indicated, the Board's order was entered on May 25, 1989, and the petition for administrative review was filed on June 27, 1989, which was a Tuesday. Thus, 33 days elapsed between the entry of the order and the filing of the petition. The employer's motion to dismiss the petition for review contends Supreme Court Rule 303(a) (107 Ill. 2d R. 303(a)) requires a filing within 30 days of the entry. The union maintains the provision of section 3—103 of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—103) providing for a 35-day period after service of notice of the decision is applicable. The parties do not dispute that timely filing of the petition is necessary for us to have jurisdiction. The question with which we are confronted involves the complicated doctrine of separation of powers between the supreme court and the legislature in regard to the making of procedural rules for legal proceedings and consideration of the doctrine of *stare decisis*.

■ In regard to the jurisdiction of this court, section 6 of article VI of the Illinois Constitution of 1970 states:

> "Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court *** [with minor exceptions not applicable here]. The Supreme Court *may provide by rule* for appeals to the Appellate Court from other than final judgments of Circuit Courts. *** The Appellate Court shall have such *powers of direct review of administrative action as provided by law.*" (Emphasis added.) Ill. Const. 1970, art. VI §6.

■ Acting pursuant to its constitutional power to provide by law for direct review to the appellate court from administrative action, the General Assembly provided as follows in section 11(e) of the Act:

> "A charging party or any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may apply for and obtain judicial review of an order of the Board entered under this Act, in accordance with the provi-

sions of the *Administrative Review Law,* as now or hereafter amended, except that such judicial review shall be afforded directly in the appellate court ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 1611(e).

■ Section 3—102 of the Administrative Review Law provides in part "[u]nless review is sought of an administrative decision within the time and in the manner herein provided," judicial review of that decision is barred. (Ill. Rev. Stat. 1987, ch. 110, par. 3—102.) Section 3—103 of the Administrative Review Law then states:

"Commencement of action. Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby. The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when personally delivered or when deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected thereby at his or her last known residence or place of business.

The form of the summons and the issuance of alias summons shall be according to rules of the Supreme Court." Ill. Rev. Stat. 1987, ch. 110, par. 3—103.

■ Acting pursuant to (1) the then existing provision of section 3 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 266), and (2) "its constitutional authority to 'provide by rule for expeditious and inexpensive appeals,' " the supreme court promulgated Supreme Court Rule 335 (107 Ill. 2d R. 335), effective July 1, 1984, providing for direct review of administrative orders by the appellate court. (107 Ill. 2d R. 335, Committee Comments, at 443.) At that time, section 3 of the Administrative Review Act provided for power in the supreme court to "make rules of pleading, practice and procedure supplementary to but not inconsistent with" that legislation. (Ill. Rev. Stat. 1971, ch. 110, par. 266.) That provision in regard to the rule-making power of the supreme court was not carried over to the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*), probably because recitation of that power was not deemed necessary.

Supreme Court Rule 335(a) provides for the form of the petition to initiate judicial administrative review in the appellate court. Rule 335(b) states that the petition shall be served on parties of record, in-

cluding the administrative agency "in the manner prescribed for serving and proving service of a notice of appeal in Rule 303(d)." (107 Ill. 2d R. 335(b).) Rules 335(c), (d), (e), (f), and (g) provide for participation by other parties, the record, time for filing record, time for filing briefs, and stays, respectively. Rule 335(h) then states:

> "(1) Insofar as appropriate, the provisions of Rules 301 through 373 (except for Rules 321 through 326) are applicable to proceedings under this rule. ***
>
> (2) Sections 3—101, 3—108(c), 3—109, 3—110, and 3—111 of the Code of Civil Procedure [the Administrative Review Act] are applicable to proceedings to review orders of the agency." 107 Ill. 2d R. 335(h).

Notably, Supreme Court Rule 335(h) refers to Supreme Court Rule 303, which states the 30-day filing requirement, as being applicable "[i]nsofar as appropriate," and does not list section 3—102 of the Administrative Review Law as being applicable. Thus, tension exists between the rulemaking powers of the judiciary and the legislature in regard to determination of the time limit for seeking judicial review of an administrative decision in the appellate court. Noting these matters, the Appellate Court for the First District recently held, for the first time, in *County of Cook v. Illinois Local Labor Relations Board* (1989), 189 Ill. App. 3d 1057, 545 N.E.2d 934, *appeal allowed* (1990), 131 Ill. 2d 558 (Cermak Health Services), that the 30-day provision of Rule 303 prevails over the 35-day provision of section 3—102.

The *Cermak Health Services* court also considered the comments of the committee recommending Supreme Court Rule 335 (107 Ill. 2d R. 335, Committee Comments), which had stated: (1) several provisions of the Administrative Review Act, then in force, were not suitable for judicial review in the appellate court; and (2) the petition described in Rule 335(a) serves the same function as a notice of appeal. That court then discussed the delicate balance between the rulemaking power of the judiciary and that of the legislature as last examined in *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322. The *Cermak Health Services* court then concluded that to permit a mere inference the legislature intended section 3—103 to apply to administrative review taken directly to the appellate court to prevail over the more direct inference from Supreme Court Rule 335 that Supreme Court Rule 303(a) was to determine the length of the filing period would violate the superior position of the supreme court under the doctrine of separation of powers.

Recognizing the delicate balance in the rulemaking power involved, the *Cermak Health Services* court distinguished the adminis-

trative law provisions involved there (the same as involved here) and the procedural legislation applicable in *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n* (1988), 175 Ill. App. 3d 39, 529 N.E.2d 671. There, a different division of the Appellate Court for the First District held that an express time frame for judicial review of decisions of the Commerce Commission set forth in section 10—201(a) of the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—201(a)) controlled over Supreme Court Rule 303(a). The *Cermak Health Services* opinion made clear that court was not holding that Supreme Court Rule 303(a) would apply rather than section 11(e) if section 11(e) of the Act had set forth a time frame for filing for review.

■ We recognize much of the logic of *Cermak Health Services*, but we deem one significant factor was not taken into consideration. The judicial article of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI) does not appear to treat the power of the supreme court to determine rules of procedure in exactly the same posture with regard to (1) civil and criminal cases in the circuit court; (2) cases on appeal; and (3) judicial review of administrative decisions. Other than the inference of rule-making power arising from (1) the statement of the vesting of judicial power in the courts in section 1, article VI, of the constitution (judicial article) (Ill. Const. 1970, art. VI, §1), and (2) the grant to the supreme court of general administrative and supervisory authority over the courts in section 16 of that article (Ill. Const. 1970, art. VI, §16), the constitution is silent as to the supreme court's power to make rules concerning procedure in the circuit court. In regard to appeals, the constitution (1) directs the supreme court to "provide by rule for expeditious and inexpensive appeals" (Ill. Const. 1970, art. VI, §16); (2) authorizes the supreme court to provide by rule for appeal of interlocutory orders to the appellate court; and (3) authorizes the supreme court to provide for appeals directly from the circuit court or from the appellate court to the supreme court, when those appeals do not arise as a constitutional right (Ill. Const. 1970, art. VI, §4). In regard to judicial review of administrative decisions, the constitution is silent as to express rulemaking power of the supreme court, but, as we have indicated, the judicial article states that appellate and circuit courts respectively "shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, §9.

Since the adoption of the amendment to the judicial article of the Illinois Constitution of 1870, effective January 1, 1964 (Ill. Const. 1870, art. VI, as amended), the supreme court has rendered several

important decisions concerning its rulemaking power. In *People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878, and *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, the court held that, with exceptions not stated in the present judicial article, it had exclusive power to make rules concerning appellate procedure. In *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602, the court held that a statute concerning the conduct of *voir dire* examination of jurors in criminal cases was void because it infringed upon a supreme court rule on the subject which had been enacted pursuant to the court's rulemaking power. The *Jackson* opinion, citing older cases, elaborated upon the existence of the power to make rules of procedure as an inherent part of the judicial power. Recently, in *O'Connell* (112 Ill. 2d 273, 492 N.E.2d 1322), the court recognized the existence of some concurrent power in the legislature in regard to rulemaking as long as the exercise of legislative power did not infringe upon the court's constitutional power. The court then struck down legislation permitting a civil plaintiff to voluntarily dismiss its complaint and then refile within a year, to the extent the statute allowed such a party to not comply with a rule requiring diligence in serving process upon defendants. See also *People v. Walker* (1988), 119 Ill. 2d 465, 519 N.E.2d 890.

*Stamos* and *Taylor* seemed to indicate the power in regard to appellate rules was in a different category than that concerning trial practice and was supreme. In *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the court held legislation concerning the appellate court's review of sentences to be invalid but seemed to consider the rulemaking power at the trial and the appellate level to be the same. Such an interpretation is supported by its suggestion in *O'Connell* that its decision there be compared with that in *Stamos*. (*O'Connell*, 112 Ill. 2d at 281, 492 N.E.2d at 1326.) However, except by promulgation of Supreme Court Rule 335 concerning direct review of administrative orders by the appellate court, the supreme court has not passed upon its power to regulate judicial review of administrative decisions.

At the time the union filed its petition for judicial review with this court, the only precedent for the time frame for filing such a petition, when the legislation creating the right of review did not specify the time frame, was *City of Benton Police Department v. Human Rights Comm'n* (1986), 147 Ill. App. 3d 7, 497 N.E.2d 876. There, the Appellate Court for the Fifth District held the time frame was the 35-day period of section 3—103 of the Administrative Review Law. That decision was based upon an interpretation of Supreme Court Rule 335 that it did not cover the time of filing for judicial review. That opinion

conceded the power of the supreme court to provide for a rule which would have superseded a legislative determination as to the length of the filing period. A few months earlier, that appellate court had held procedural provisions of the Public Utilities Act (Ill. Rev. Stat., 1988 Supp., ch. 111²/₃, par. 10—201; Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—204) concerning judicial review in the appellate court were invalid as infringing on the supreme court's rulemaking power. (*Consumers Gas Co. v. Illinois Commerce Comm'n* (1986), 144 Ill. App. 3d 229, 493 N.E.2d 1148.) Dictum of this court had also stated section 3—103 was applicable in determining the time frame for administrative review in the appellate court. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 902, 493 N.E.2d 1130, 1133.) The decision in *Cermak Health Services* is not binding upon us. Under the circumstances we have related, a theory close to that of *stare decisis* would tend to direct us to follow the precedent in force at the time the union filed its petition.

In an article in a periodical published by the organized bar of this State discussing the plenary nature of the supreme court's rulemaking power, the author described "the review of administrative matters by the appellate court and circuit court" as the only "power over procedure *** reserved to the legislature." (L. Bonaguro, *The Supreme Court's Exclusive Rulemaking Authority*, 67 Ill. B.J. 408, 409 (1979).) The statement of reservation of legislative power referred to was that contained in article VI, sections 6 and 9, of the Illinois Constitution of 1970, which states the appellate and circuit courts respectively "shall have such powers of direct review of administrative action as provided by law." (Ill. Const. 1970, art. VI, §6; see also Ill. Const. 1970, art. VI, §9.) Thus, at least minor uncertainty exists as to the balance of power between the supreme court and the legislature in regard to procedure for judicial review of administrative decisions. In *O'Connell*, the supreme court stated its desire, when appropriate, to reconcile with the legislature on rulemaking. (*O'Connell*, 112 Ill. 2d at 281, 492 N.E.2d at 1326.) In its recent annual report to the legislature, the supreme court recommended the legislature reexamine all procedures for review of administrative decisions in the appellate court with a view toward conforming them to Supreme Court Rule 335.

■ Accordingly, although we fully agree with the *Cermak Health Services* court that there is a need for an orderly, uniform procedure for review of administrative decisions in this court, we also recognize the uncertainty evidenced by the *City of Benton* opinion as to whether

Supreme Court Rule 335 should be interpreted to mean that Rule 303(a) determines the time frame for filing here, the uncertainty as to where the power lies in this regard, and the evident desire of the supreme court to avoid a conflict on this point if appropriate legislation is adopted in the future. Coupling these factors with our concern in regard to *stare decisis*, we elect not to follow *Cermak Health Services* here and dismiss the union's petition. Surely, prudent counsel will now file for administrative review in the appellate court within the time frame set forth in Supreme Court Rule 303(a). We should not prejudice those who did not do so in the past. We hold we have jurisdiction.

We now turn to the merits of the case. The following facts are not disputed: (1) at times pertinent, Michael Rohan was the director of probation court services for the employer; (2) in 1984 the Administrative Office of the Illinois Courts gave the employer new guidelines and directed the employer to implement them; (3) one part of those guidelines concerned "field work," which required probation officers to go to various places to obtain information in regard to how probationers were faring; (4) one aspect of this work involved a visit by the officer in the probationer's home; (5) concerned with the lack of training of probation officers and concerned that some were arming themselves before making home visits, Rohan issued a memo on October 30, 1986, to all probation officers working with adult probationers directing them to temporarily suspend all home visits; (6) because of the pressure of other matters, Rohan was unable to study the question of field-work training until July 1987, shortly after the union had filed its representation petition; (7) in October 1987, Rohan announced new field-work policy and training requirements, all to take effect January 1, 1988; (8) on November 18, 1987, Larry Spivak, a representative of the union, wrote to Rohan requesting bargaining on various aspects of the new field-work requirements; and (9) Rohan refused to bargain and continued in that refusal up to the time of the initiation of proceedings concerning the allegation of an unfair labor practice.

■■ Section 10(a)(4) of the Act states that an unfair labor practice occurs when an employer refuses to "bargain collectively in good faith with a labor organization which is the *exclusive representative* of public employees in an appropriate unit." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)(4).) Section 3(f) of the Act defines an "exclusive representative" as the labor organization historically or voluntarily recognized by the employer (in accordance with the Board procedures) or "*designated by the Board* as the representative of a majority of public employees in an appropriate bargaining unit." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 1603(f).) The Board

determined the union was not "historically recognized by the employer" and had not been "designated" by it as "a representative of a majority" of the employees in the bargaining unit until the Board certified the union as such. Thus, the Board concluded the employer had no duty to bargain until that certification took place on April 27, 1988.

The union points out that, after a union has won a representation election, an employer has a strong incentive to change working conditions in the hiatus period before the union is certified as the representative if the employer can do so without bargaining. A disadvantage to the union resulting from such a change is that it may be required to start bargaining from a weaker position. To avoid this, the union requests we invoke an "at peril" rule, whereunder the employer makes unilateral changes in terms and conditions of employment during the hiatus period subject to the risk that the changes will be invalid if the union is subsequently certified. In support of this theory, the union cites *Anchortank, Inc. v. NLRB* (5th Cir. 1980), 618 F.2d 1153, and various NLRB decisions, including *Evans Rotork, Inc.* (1980), 251 N.L.R.B. 660, 105 L.R.R.M. 1345, and *Mike O'Connor Chevrolet-Buick-GMC Co. v. NLRB* (1974), 209 N.L.R.B. 701, 85 L.R.R.M. 1419. The union deems the application of the "at risk" doctrine most appropriate here, where the only uncertainty holding up certification did not concern the propriety of the election but only whether the County of Cook should have been a respondent to the proceedings as a co-employer.

■■ The cases cited by the union do approve an "at risk" doctrine as described by the union. However, they concern the operation of section 158(a)(5) of the National Labor Relations Act (NLRA), which states an employer commits an unfair labor practice when it refuses "to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a)." (29 U.S.C. §158(a)(5) (1982).) Section 159(a) of the NLRA then provides the "exclusive representatives of all the employees in [a] unit" shall be those "designated or *selected* for" collective bargaining. (Emphasis added.) (29 U.S.C. §159(a) (1982).) In *Fugazy Continental Corp. v. NLRB* (D.C. Cir. 1984), 725 F.2d 1416, and *NLRB v. Allied Products Corp.* (6th Cir. 1977), 548 F.2d 644, courts have held that the duty of an employer under the NLRA to bargain with the representative of the employees begins with the election of the representative and not upon certification. In *Allied Products*, the court deemed the "at risk" doctrine to apply but stated the duty to bargain arose upon the bargaining representative's election.

We deem the difference between the wording of the applicable provisions of the Act and the NLRA to be significant. Had the legislature intended for the representative to have authority to act upon election or "selection," it would likely have so stated. An interpretation of the Act by us to require the employer to bargain with the elected representative in the hiatus period before certification or to refuse to do so "at risk" would require us to infer from the Act the existence of such a policy. As the employers subject to the Act are all public bodies or officers, the legislature could have concluded the danger to employees during the hiatus period would be less than when private enterprises are the principal employers as under the NLRA.

■■ The supreme court has stated that, upon judicial review of an administrative decision, the agency's interpretation of a statute, while not binding on the court, expresses an informed source for ascertaining the meaning of a statute. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) Here, where the union seeks to have us imply the existence of the "at risk" doctrine by analogy to NLRA provisions and as a rule of sound labor policy, the expertise of the Board is particularly helpful in reaching a decision.

The Board's interpretation of the portions of the Act involved is persuasive. The Board properly held the duty on the employer to bargain did not arise until certification.

■ The union also maintains the direction of the employer to the probation officers on October 1987 to engage in certain field work was, of itself, an unfair labor practice. Action by an employer in altering working conditions of its employees while an election to determine representation of the employees is pending has often been held to be an unfair labor practice regardless of whether the change is beneficial or detrimental to the employees. (*NLRB v. Styletek, Division of Pandel-Bradford, Inc.* (1st Cir. 1975), 520 F.2d 275.) The employer and the union present arguments here as to whether this change in working conditions was, in fact, an unfair labor practice. We may not consider these arguments because the Board held the issue was waived. If the Board was correct, we need not consider the issue of the effect of the change. If the Board should have considered the issue, we would send the matter back to the Board for its consideration before we would pass on the issue.

■ Accordingly, the final issue for us to decide is whether the Board correctly determined the issue was waived. By the terms of section 11(a) of the Act, a person or entity wishing to obtain relief for an unfair labor practice initiates the proceedings by filing a "charge"

with the Board. (Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) The Board or its agents then makes an investigation, and, if the Board finds the existence of "a dispositive issue of law or fact the Board shall issue a complaint *** stating the charges." (Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) Hearings are then held, and, ultimately, the Board issues its decision.

Here, the amended charge was filed by Larry Spivak as a staff representative of the union. It was on a form apparently furnished by the Board. A place on the form provided for a designation as to which subsections of section 10(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)) were alleged to be violated. Section 10(a) sets forth the various types of conduct on behalf of an employer which constitute an unfair labor practice. Subsections (1) and (4) of section 10(a) were stated to have been violated by the employer. Attached was a type-written page designated "Basis of Charge." The results of the representation election and the certification by the Board were stated. The sheet referred to Spivak's request to bargain and Rohan's refusal to do so. Reference was then made as to the remedy sought, which was stated in these words:

> "1. The union asks the labor board to seek an injunction preventing the employer from unilaterally instituting the field time policy.
>
> 2. To cease and desist the application of the field time policy and to bargain over this policy, and its impact.
>
> 3. To bargain prior to making any other changes with respect to the wages, hours, and working conditions of employment for bargaining unit employees."

The complaint charged the employer with violating sections 10(a)(1) and (a)(4) of the Act. As to the issues, the complaint recited the previously described conduct of Rohan in regard to suspending home visits by probation officers and then directing them to engage in field work, which would include home visits. Then, the union's request for bargaining over the changes in working conditions and Rohan's refusal to bargain were recited. The employer was then alleged to have violated sections 10(a)(1) and (a)(4) by refusing to bargain. The complaint requested an order requiring the employer to (1) cease and desist from previously described unfair labor practices, and (2) bargain with the union prior to making any further changes in wages, hours, or working conditions. The complaint also requested such other and further relief as required.

Clearly, neither the charge nor the complaint referred to the act of directing the officers to engage in field work such as home vis-

its as an unfair labor practice in itself. For this reason, the Board held the issue to have been waived. Section 10(a)(4) of the Act expressly states that refusal to bargain in good faith is an unfair labor practice. Section 10(a)(1) is a general catch-all subsection. The provision deems it to be an unfair labor practice for an employer "to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in [the] Act," or to "dominate or interfere" with a union as well as other conduct clearly not material here. (Ill. Rev. Stat. 1987, ch. 48, par. 1610(a)(1).) A practice has developed of determining that when an employer is guilty of a refusal to bargain in good faith, the employer is derivatively guilty of a section 10(a)(1) violation as well. See *Village of Oak Park v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 7, 522 N.E.2d 161.

The union contends the reference in the charge and the complaint to section 10(a)(1) of the Act was sufficient to raise the issue of the change of working conditions as an unfair labor practice in itself. The Board concluded the reference to section 10(a)(1) was intended to make a claim of an unfair labor practice derivative of the section 10(a)(4) alleged violation. We agree. In the context of both the charge and the complaint, this was clearly so. The union made no attempt to have the amended charge or complaint amended to properly set forth allegations of an unfair labor practice other than that arising from a failure to bargain in good faith. The Board properly held the issues were limited to the issue of a failure to bargain in good faith.

Accordingly, the motion to dismiss is denied and the Board's order on review is affirmed.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.