THE COUNTY OF COOK, Appellant, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD *et al.*, Appellees.

First District (2nd Division)  No. 1—88—3146

Opinion filed September 18, 1990.—Rehearing denied November 7, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Iris E. Sholder and Diane Kristen, Assistant State's Attorneys, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Local Labor Relations Board.

Daniel I. Koen, of Cornfield & Feldman, of Chicago, for appellee American Federation of State, County & Municipal Employees.

JUSTICE SCARIANO delivered the opinion of the court:

This dispute arises out of a request by the appellee union that Cook County (the County) bargain over the possible termination or other change in employment of certain temporary civil service appointees based on the results of a civil service examination covering their position. The union filed an unfair labor practice charge after the County refused to bargain, and the Illinois Local Labor Relations Board held that the issue was a mandatory subject of bargaining. We affirm in part and reverse in part.

In December 1979, the Illinois General Assembly abolished the Health and Hospitals Governing Commission, and Cook County Hospital was placed directly under the County Board's jurisdiction. (Ill. Rev. Stat. 1981, ch. 34, par. 5020.) As a result, most positions at the hospital were to be filled pursuant to the civil service provisions of "An Act to revise the law in relation to the election of county commissioners in Cook County and to fix their term of office" (Ill. Rev. Stat. 1981, ch. 34, par. 1105 *et seq.*, now recodified at Ill. Rev. Stat. 1989, ch. 34, par. 3—14011 *et seq.*) (Counties Code), and the rules of the Cook County Civil Service Commission (Commission) promulgated thereunder (Ill. Rev. Stat. 1981, ch. 34, par. 1108, now recodified at Ill. Rev. Stat. 1989, ch. 34, par. 3—14014).

The County and the union entered into a collective bargaining agreement effective December 1, 1984, which covered, among others, the newly created position of computer operator I at Cook County Hospital. Three individuals subsequently received temporary appointments to this position during 1986 and 1987, all of whom successfully completed the probationary period provided for in the labor agreement and became members of the bargaining unit.

Typically, in order to obtain a classified civil service position, a candidate is required to pass a qualifying examination and rank sufficiently high on a register prepared by the Commission, thus entitling her to certification to the hiring authority; scoring adjustments are made for prior experience gained within the system. (Ill. Rev. Stat. 1989, ch. 34, pars. 3—14018, 4—14019, 4—14020; Civil Service Commission Rule VIII.) Where an examination and register have not been prepared, the Commission may authorize temporary appointments if a *bona fide* emergency requiring immediate appointment exists. (Civil Service Commission Rule VI, §2.) The Commission rules define temporary appointment as "[t]he employment of a person in a position from

day to day when an appointment by certification or reinstatement cannot be made and which shall be terminated when an eligible can be certified or reinstated to the position." Civil Service Commission Rule I, §1.

On January 22, 1988, the Civil Service Commission, through the County's department of personnel, posted notice that a civil service examination would be given for the position of computer operator I at Cook County Hospital. A union negotiator raised the issue of testing the incumbent operators at a meeting held on January 26, 1988, arguing that the incumbents should be "grandfathered" into the positions they were currently filling. The County's representative stated that it did not have the authority to bargain over the matter and that it was required by statute to fill the positions through the normal civil service testing and certification process.

Based on the County's refusal to bargain over the matter, the union filed an unfair labor practice charge with the Illinois Local Labor Relations Board (Board) on January 27, 1988, and the Board filed a complaint against the County on March 8, 1988. On March 12, 1988, during the pendency of the administrative proceeding, the three incumbents took the civil service examination. Testimony offered at the hearing indicated that if the incumbents were not among the first five names on the list of eligibles, the County intended either to dismiss or demote them. The record does not disclose the results of the examination.

On July 22, 1988, the hearing officer issued his decision holding that the union's proposal was a mandatory subject of bargaining within the meaning of section 7 of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1607), and ordered the County not to take any action to displace the incumbents until it had first engaged in good-faith bargaining over the dispute. The decision of the hearing officer was affirmed by the Board in an opinion issued September 28, 1988, and this appeal followed.

I

■ The County first contends that the Civil Service Commission is a separate entity from the County, which was the only party named in the administrative complaint, and that the adverse agency ruling is a nullity because the Commission should have been joined as a necessary and indispensible party to this action. (*Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 480 N.E.2d 1312; *Burt v. Board of Education of Coal City Community Unit School District No. 1* (1985), 132 Ill. App. 3d 393, 477 N.E.2d 247.) We agree

with the Board's conclusion that this argument is without merit.

The Board's decision, it is asserted, is inconsistent with prior supreme court precedent and is therefore erroneous. (See *Springfield-Sangamon County Regional Plan Comm'n v. Fair Employment Practices Comm'n* (1978), 71 Ill. 2d 61, 373 N.E.2d 1307.) In *Springfield-Sangamon*, the county passed a resolution creating the Sangamon County Plan Commission, and the city passed an ordinance creating the Springfield Plan Commission; the two commissions met jointly in carrying out their respective mandates under the designation Springfield-Sangamon County Regional Plan Commission (Joint Commission). A charge of unfair employment practices was filed with the Fair Employment Practices Commission (FEPC), in which it was alleged that the Joint Commission had failed to hire the complainant due to racial bias. Although the FEPC is statutorily prohibited from filing an administrative complaint more than 180 days after a charge is filed, the FEPC and the Joint Commission stipulated to an extension of time to file. It later became clear that the FEPC had no jurisdiction over the Joint Commission and so it amended its complaint to add Springfield and Sangamon County as defendants. After the FEPC found for the complainant, the city and the county sought judicial review, raising a statute of limitations argument. The appellate court affirmed, holding that the Joint Commission was not an autonomous legal entity, and that the stipulated extension of time was therefore binding on Springfield and the county.

The supreme court reversed on the ground that the stipulation was unfair to the county and the city, and that the FEPC had caused unreasonable delays in resolving the dispute by its own actions. The court further observed that this conclusion was not altered by "[t]he technical legal affiliation between the regional plan commission and the city and county, or the fact that the city and county had notice of a charge under the Act without becoming parties thereto." 71 Ill. 2d at 70-71, 373 N.E.2d at 1311.

The above-quoted language can hardly be read, as the County would have it, as establishing that the Civil Service Commission and the County have a mere "technical legal affiliation" and are completely distinct legal entities. The supreme court's reversal resulted from its disapproval of the excessive delays by the FEPC in acting on the complainant's allegations, in violation of the statutory limitations period, and on concepts of fairness. It cannot support the general proposition urged by the County here.

The County also argues that the Board improperly analogized this case to a number of decisions holding that municipal commissions are

not separate legal entities from the municipality which created them. (See, *e.g.*, *Troutman v. Keys* (1987), 156 Ill. App. 3d 247, 509 N.E.2d 453 (Chicago board of police); *People ex rel. Hurley v. Graber* (1950), 405 Ill. 331, 90 N.E.2d 763 (Chicago Civil Service Commission).) The fact that these entities are created pursuant to a grant of discretionary authority under the Municipal Code is claimed to be a critical distinction from this case, which involves a civil service commission created by positive statutory mandate. Ill. Rev. Stat. 1989, ch. 34, par. 3—14011.

We reject this contention, as the statute contains sufficient indicia of control over the Commission by the County Board to obviate a finding that they are separate legal entities. The Cook County Board has the power to appoint civil service commissioners (Ill. Rev. Stat. 1989, ch. 34, pars. 3—14011, 3—14012), to fix the salaries of the commissioners (Ill. Rev. Stat. 1989, ch. 34, par. 3—14030), and to appropriate funds for the Commission's operations (Ill. Rev. Stat. 1987, ch. 34, par. 3—14031). The fact that the County is not involved in the day-to-day operations of the Commission is irrelevant; indeed, the functioning of the Commission would be less efficient if the case were otherwise.

The County has failed to cite any decision supporting a contrary analysis. Its reliance on *Howard v. County of Cook* (1986), 145 Ill. App. 3d 538, 495 N.E.2d 1166, is unwarranted. *Howard* involved the Position Classification Agency, which is statutorily empowered to establish salaries, job titles, and codes used for all county jobs. (Ill. Rev. Stat. 1989, ch. 34, par. 3—14002.) Since these fiscal duties are not related to the statutory authority of the Civil Service Commission, the court concluded that "classification" of a position by the agency for budgetary purposes does not mean that the position is governed by the civil service system. (*Howard*, 145 Ill. App. 3d at 541-42, 495 N.E.2d at 1169.) This holding in no way addresses the issue of whether the Civil Service Commission or the Position Classification Agency is a separate and distinct legal entity from the County. Thus, *Howard* is inapposite to the case at bar.

■ We therefore affirm the Board's holding that the Civil Service Commission is not a separate legal entity. Given this conclusion, the County's argument that failure to join the Commission was a sufficiently serious dereliction to constitute a violation of the County's due process rights necessarily fails as well.

## II

■■ We next consider whether the Board erred in holding that

the status of the three computer operators based on their scores on the civil service examination was a mandatory subject of bargaining pursuant to section 7 of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1607). Appellees argue that the Board's interpretation of the Act is generally entitled to deference since the Board is the agency charged with its administration. (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536, 508 N.E.2d 1058, 1062; Ill. Rev. Stat. 1989, ch. 48, par. 1605.) However, the deference normally accorded such interpretations does not permit a reviewing court to allow an erroneous conclusion of law to stand. (*City of Decatur v. American Federation of State, County, & Municipal Employees* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219.) We hold that the Board's interpretation of section 7 in this case is incorrect, and we reverse.

Section 7 provides that a public employer must bargain over "any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law." (Ill. Rev. Stat. 1989, ch. 48, par. 1607.) The County asserts that the testing requirements contained in the civil service provisions of the Counties Code are conflicting laws of sufficient authority to override the section 7 duty to bargain. This argument was rejected by the Board primarily in reliance on our supreme court's decision in *City of Decatur v. American Federation of State, County, & Municipal Employees* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219. In that case, the union claimed that its proposal requiring arbitration of grievances arising from disciplinary suspensions was a mandatory subject of bargaining. The City countered that the proposal would supplant the Municipal Code civil service provisions adopted by the City, which stated that nothing in the Municipal Code limited a municipality's power to suspend without a hearing in certain specified cases (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—18), and would therefore constitute a matter that was "specifically provided for" in another law within the meaning of section 7.

The supreme court held that the City had a duty to bargain, stating, "[i]n these circumstances, we construe the union's proposal as pertaining to a matter not specifically provided for or in violation of another law, and as supplementing, implementing, or relating to the provisions of the civil service scheme adopted by the city." (*City of Decatur*, 122 Ill. 2d at 366-67, 522 N.E.2d at 1225.) However, the court anchored its holding that the Act should control in strictly public policy considerations: the broad scope of the Act; the optional nature of the civil service system at issue, with the concomitant dan-

ger that municipalities could freely amend or eliminate the civil service code to circumvent the Act's requirements; and the legislature's express preference for arbitration as a means of resolving labor disputes. 122 Ill. 2d at 366-67, 522 N.E.2d at 1225.

We cannot agree that *Decatur* requires bargaining in this case, for we conceive of no way to interpret the bargaining proposal of the union here as merely "supplementing, implementing, or relating to" another statute. A direct conflict exists with a matter specifically provided for in another law. With several enumerated exceptions not relevant to this case, section 3—14013 of the Counties Code requires that the Commission "classify all the offices and places of employment in said county with reference to the examination hereinafter provided for." (Ill. Rev. Stat. 1989, ch. 34, par. 3—14013.) Section 3—14016 further states that "[a]ll applicants for offices or places in said classified service *** shall be subjected to examination." (Ill. Rev. Stat. 1989, ch. 34, par. 3—14016.) These provisions must be given their plain meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.) Appellees neglect to take into consideration this established rule of statutory construction in arguing that bargaining over the possible exemption of temporary appointees and other incumbents from the examination requirement would not violate another law within the meaning of section 7.

We also find that the policy justifications underpinning the *Decatur* decision are not present here. The Cook County civil service system is not part of an optional scheme; the Civil Service Commission and the examination requirement are both mandated by statute. (Ill. Rev. Stat. 1989, ch. 34, pars. 3—14011, 3—14016.) Then, too, appellees cannot rely on the policy supporting arbitration of grievance disputes as a basis for requiring bargaining under section 7, in contrast to *Decatur*.

■ To meet these objections, appellees respond that as a home rule unit, the County can institute its own civil service system, thus supplanting the statute. (Ill. Const. 1970, art. VII, §6; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95; *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 301 N.E.2d 281.) They conclude that the mandatory nature of the Cook County civil service system is thus illusory. Although we note that neither *Stryker* nor *Beck* is of any import here, we need not reach the merits of this issue since the argument is made for the first time in this court, without having been asserted in the administrative proceeding. *American Federation of State, County & Municipal Employees v. Illinois State Labor Rela-*

*tions Board* (1990), 196 Ill. App. 3d 238, 553 N.E.2d 415; *Faculty Association of District 205 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 880, 530 N.E.2d 548, *appeal denied* (1989), 124 Ill. 2d 554, 535 N.E.2d 913.[1]

■ For the foregoing reasons, we are not persuaded by two earlier decisions of the Board holding that a governmental employer is required to bargain over the administration of a civil service examination to temporary appointees. (See *Fraternal Order of Police*, 4 Pub. Employee Rep. (Ill.) par. 3012, No. L–CA–87–187 (ILLRB, May 18, 1988); *General Service Employees Union, Local 73*, 3 Pub. Employee Rep. (Ill.) par. 3030, Nos. L–CA–87–200, L–CA–87–205 (ILLRB, Sept. 21, 1987).) Our conclusion is not affected by the fact that *Fraternal Order of Police* was recently affirmed by another division of this court (*Forest Preserve District v. Illinois Local Labor Relations Board* (1989), 190 Ill. App. 3d 283, 546 N.E.2d 675, *appeal denied* (1990), 129 Ill. 2d 563, 550 N.E.2d 556). We respectfully disagree with and are not bound by that decision. The court in *Forest Preserve District* was heavily influenced by "the policy favoring public employee bargaining laws over civil service rules." (190 Ill. App. 3d at 291, 546 N.E.2d at 680.) This analysis overlooks the fact that the Cook County civil service system as a whole and the examination requirement in particular are mandated by statute, and comes much too close to the Board's position rejected by the supreme court in *Decatur*, that is, the Board's conclusion in the administrative proceeding that the duty to bargain set out in section 7 invariably overrides any contrary statutory command (*Decatur*, 122 Ill. 2d at 361, 522 N.E.2d at 1222). Moreover, *Forest Preserve District* ignores completely the significant distinction in *Decatur* to which we have made reference earlier in this opinion, namely, the legislature's express preference for arbitration as a method of resolving labor disputes.

We hold that the Board erred in ordering the County to bargain over the replacement or demotion of the three computer operators.

### III

■ We believe it to be appropriate to make clear that our holding is not intended to preclude all bargaining relating to the future status of the computer operators involved in this proceeding. Even though

---

[1]We note in passing that we are similarly denied the opportunity to consider the impact of the Act's preemption clause (Ill. Rev. Stat. 1989, ch. 48, par. 1615) on this case, as appellees have failed to raise the issue in the administrative proceeding or in the briefs filed in this appeal.

the County cannot be required to bargain over their actual dismissal or demotion, this is not to say that the County is not required to bargain over the impact of such action.

At a bargaining session held January 26, 1988, the County indicated it was open to bargaining over reassigning or transferring prospectively displaced incumbents to another position. However, the unfair labor practice charge filed one day later included a request for an order requiring the County "to bargain with AFSCME regarding the impact of [the examination] on bargaining unit employees." It is not clear from the record or the briefs filed in this case whether the County still holds to its earlier position stated at that bargaining meeting. Moreover, the Board's decision does not address the duty to bargain over impact. Consequently, we specifically note that our holding here does not limit in any way the duty to bargain over impact.

For the foregoing reasons, the decision of the Board is reversed in part and affirmed in part.

Reversed in part, affirmed in part.

DiVITO, P.J., and HARTMAN, J., concur.