(Nos. 71221, 71239 cons.—

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, *et al.*, Appellants, v. THE COUNTY OF COOK, Appellee.

*Opinion filed December 19, 1991.*

BILANDIC, J., took no part.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for appellant American Federation of State, County & Municipal Employees, Council 31, AFL-CIO.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield (Robert J. Ruiz and Rosalyn B. Kaplan, Solicitors General, of counsel), for appellant Illinois Local Labor Relations Board.

Jack O'Malley, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Karen J. Dimond, Assistant State's Attorney, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Appellants, American Federation of State, County and Municipal Employees, Council 31, AFL-CIO (AFSCME), and the Illinois Local Labor Relations Board (the Board), appeal the decision of the appellate court that appellee, the County of Cook, was not required to bargain over the application of a civil service testing requirement to post-probationary employees who were hired before the establishment of the requirement. (204 Ill. App. 3d 370.) We reverse.

## FACTUAL BACKGROUND

On August 5, 1985, the county and AFSCME entered into a collective-bargaining agreement effective from December 1, 1984, to November 30, 1987. This agreement covered the position of Computer Operator I at Cook County Hospital, even though the county placed no one in that position until September 1985. The position was

scheduled for civil service examination in 1987, pursuant to the county's procedure of annually surveying all temporary appointments. However, no examination for the position was actually administered until 1988.

Although the county had budgeted five Computer Operator I positions at Cook County Hospital, only three of those positions were filled, all by temporary appointees, when, in January 1988, the county gave notice of a civil service examination for the position. The temporary appointments did not confer certified status upon the three employees so appointed. On January 26, 1988, at a contract negotiation meeting with the county, AFSCME raised the issue of the Computer Operator I examination and requested that the county bargain over the effects of subjecting the three incumbent Computer Operator I employees to the examination requirement. AFSCME also insisted that the three employees be "grandfathered" into the position of Computer Operator I. The county refused to do either on the ground that it was barred by State statute from such bargaining.

On January 27, 1988, AFSCME filed an unfair labor practice charge with the Board, alleging that the county had failed to bargain in good faith over the civil service commission's examination requirement for the Computer Operator I position. After issuing a complaint alleging violations of the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*), the Board, through a hearing officer, found that the county had violated, *inter alia*, section 10(a)(4) of the Act, declaring it an unfair labor practice for an employer to refuse to bargain collectively in good faith with a public employee union. (Ill. Rev. Stat. 1987, ch. 48, par. 1610.) Specifically, the hearing officer found that the county had refused to bargain over the effects of the examination requirement upon the three incumbent employees occupying the Computer Operator I position and,

thereby, *inter alia,* affected their terms and conditions of employment. Upon the county's filing of exceptions to the hearing officer's recommendations to the Board, the Board adopted the hearing officer's findings and conclusions. As noted above, the appellate court reversed the decision of the Board.

## DISCUSSION

On appeal, AFSCME argues that the appellate court erroneously refused to consider, on the basis of waiver, its argument that Cook County's civil service system, adopted pursuant to the provisions of the present Counties Code (the Code) (Ill. Rev. Stat. 1989, ch. 34, par. 1—1001 *et seq.*), like that at issue in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, was not mandatory upon and could be changed at anytime by the county. AFSCME further argues that the court ignored the policy, recognized in *City of Decatur,* favoring public employee bargaining laws over civil service laws and erroneously concluded that *City of Decatur* was limited to circumstances involving the issue of arbitration. As a result, AFSCME concludes, the court erroneously found *City of Decatur* distinguishable from this case. 204 Ill. App. 3d at 377-78.

## WAIVER

Before reaching the merits of the parties' arguments, we must determine whether the appellate court correctly refused, on the basis of waiver, to entertain AFSCME's argument that, because of its status as a home rule unit, the county was not bound by the civil service provisions of the Code. AFSCME so argued in response to the county's characterization of those provisions as mandatory upon it, in contradistinction to those at issue in *City of Decatur.* The appellate court held that AFSCME had

waived the argument on appeal by failing to make it to the Board. 204 Ill. App. 3d at 377.

Even assuming, *arguendo*, that AFSCME waived the argument, we choose, nevertheless, to consider it. We choose to do so on the basis of our authority to take judicial notice of the county's status as a home rule unit of local government. Ill. Const. 1970, art. VII, §6.

It is well established that courts may take judicial notice of their State's statutes and constitutional provisions. (See generally 31 C.J.S. *Evidence* §16 (1964).) Moreover, a reviewing court can take judicial notice of statutes and constitutional provisions even though they were not raised before a lower tribunal and any argument based thereon was consequently waived. (See *Tyrell v. Municipal Employees Annuity Fund & Benefit Fund* (1975), 32 Ill. App. 3d 91, 98.) Finally, we note that the waiver rule is an admonition to litigants, not a limitation upon the jurisdiction of a reviewing court. In this regard, we have recognized that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25.) We deem this case to present one of those occasions.

## CITY OF DECATUR

Having determined that waiver did not preclude the appellate court from considering AFSCME's home rule argument and does not preclude this court from so doing, we begin our analysis of AFSCME's arguments with a review of the facts involved and the reasoning which this court employed in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353.

At issue in that case was the City of Decatur's obligation to bargain collectively over a proposal by AFSCME that the city's employees be permitted to submit disciplinary grievances to arbitration. The city had refused to bargain over the proposal on the ground that it had no duty to bargain over disciplinary matters that fell within the scope of its municipal civil service system. The voters of the city had adopted a civil service system, by referendum, pursuant to article 10, division 1, of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—1 through 10—1—48).

The dispute in *City of Decatur*, like that here, centered on section 7 of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1607), which provides, *inter alia*:

> "The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, *not specifically provided for in any other law or not specifically in violation of the provisions of any law*. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements *** which either supplement, implement, or relate to the effect of such provisions in other laws." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 1607.

The City of Decatur had taken the position that its duty to bargain was limited by the language in section 7 of the Act highlighted above. Specifically, it asserted that the proposal for final and binding arbitration of disciplinary grievances would supplant certain statutory civil service provisions, which it had adopted, and would therefore constitute a matter specifically provided for in another law. *City of Decatur*, 122 Ill. 2d at 359.

On appeal to this court, the court first rejected an interpretation of section 7 of the Act by the State Labor

Relations Board which effectively eliminated any potential conflict between any other statute and the bargaining duty prescribed by the Act in favor of the duty to bargain. Nevertheless, the court held that, indeed, the City of Decatur had a duty to bargain with AFSCME over its arbitration proposal. *City of Decatur*, 122 Ill. 2d at 361-62.

The court so held in reliance upon: (1) the public policy of the State " 'to grant public employees full freedom of association, self-organization, and designation of representatives *** for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection' " (*City of Decatur*, 122 Ill. 2d at 364, quoting Ill. Rev. Stat. 1985, ch. 48, par. 1602); (2) the optional, rather than mandatory, nature of the civil service system adopted by the city and the city's power, as a home rule authority, to unilaterally alter, amend or eliminate any of the terms of that system (*City of Decatur*, 122 Ill. 2d at 365-66, citing Ill. Rev. Stat. 1985, ch. 24, par. 10—1—43); and (3) the legislature's preference for arbitration as a means of dispute resolution, as expressed in section 8 of the Act (*City of Decatur*, 122 Ill. 2d at 366).

Applying the rationale of *City of Decatur* to the case *sub judice*, we hold that the county is obligated to bargain with AFSCME over the effects of requiring the three computer operators involved in this case to take the proposed civil service examination.

## NATURE OF THE COUNTIES CODE

With respect to the bases of this court's decision in *City of Decatur*, the county argues that the civil service provisions of the Code (Ill. Rev. Stat. 1989, ch. 34, par. 1—1001 *et seq.*) are other laws specifically providing for the matter over which AFSCME seeks to bargain. Specifically, the county cites sections 3—14013 and 3—14016

of the Code. Section 3—14013 requires the classification of all the "offices and places of employment in said county with reference to the examination" provided for in section 3—14016. (Ill. Rev. Stat. 1989, ch. 34, par. 3—14013.) Section 3—14016 provides that all applicants for offices or places in the classified service shall be subjected to examination. (Ill. Rev. Stat. 1989, ch. 34, par. 3—14016.) The county argues that those provisions are not, unlike the civil service system at issue in *City of Decatur*, optional with or subject to unilateral change by the county, but mandatory upon it. We disagree.

In support of its assertion that it does not have the authority to unilaterally alter the civil service provisions of the Counties Code, the county notes that the legislature first enacted the civil service provisions of the present Code in 1941 and has not significantly altered them since. In so arguing, the county ignores that the provisions were enacted prior to the adoption of the Constitution of 1970 and the creation therein of home rule powers for certain Illinois counties and municipalities, including the county. (Ill. Const. 1970, art. VII, §6.) More importantly, it ignores the *consequence* of that fact upon its power to alter, amend, or simply abandon the civil service system provided for in the Code.

In *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, this court was asked to decide whether the home rule provisions of the Constitution of 1970 required referendum approval for the issuance of general obligation bonds by home rule counties. The court was also asked to decide whether the pre-1970 Constitution requirement to that effect in section 40 of the Counties Act (Ill. Rev. Stat. 1969, ch. 34, par. 306), one of the predecessor statutes of the present Code, was still in full force and effect pursuant to section 9 of the Transition Schedule of the Constitution of 1970 (Ill. Const. 1970, Trans. Sched. §1 *et seq.*).

This court, while disagreeing with the county that the legislature did not have authority, under the provisions of article VII, section 6, of the Constitution of 1970, to impose a referendum requirement upon home rule counties for the issuance of general obligation bonds, nonetheless noted that the legislature had not done so. (*Kanellos*, 53 Ill. 2d at 165-66.) More relevantly to this case, this court also held that the Counties Act was inapplicable to home rule counties notwithstanding the provision of the Transition Schedule that, *inter alia*, "[a]ll laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they expire by their own limitation or shall be altered or repealed pursuant to this Constitution" (Ill. Const. 1970, Trans. Sched. §9). *Kanellos*, 53 Ill. 2d at 166-67.

Specifically, the court noted that to accomplish the greater independence granted thereunder to local governmental units, designated as home rule units, to determine their government and affairs, the Constitution of 1970 conferred substantial powers upon such units subject only to the restrictions imposed or authorized therein. The court also noted that the Counties Act had been enacted prior to and not in anticipation of the introduction of the concept of home rule and the limitations thereon in the Constitution of 1970. It reasoned that, because such considerations were totally foreign in the contemplation of legislation predating the 1970 Constitution, section 40 of the Counties Act was inconsistent with the provisions of section 6(g) and the Transition Schedule. *Kanellos*, 53 Ill. 2d at 166-67.

Applying the rationale employed in *Kanellos* to the issue whether the civil service provisions of the Code are binding upon the county perforce yields but one conclusion: they are not and may be unilaterally altered, amended or even abandoned by the county. In so con-

cluding, we are mindful of the fact that *Kanellos* and the case *sub judice* involve, but different provisions of, the former Counties Act. It is thus easy to conclude that sections 3—14013 and 3—14016 of the Code, having been first enacted, like section 40 of the Counties Act, prior to and not in anticipation of the concepts of home rule and the specific limitations thereon introduced by the Constitution of 1970, are as inconsistent with those concepts as was section 40 of the Counties Act.

While we conclude that the civil service provisions of the Code are inconsistent with the home rule powers of the county, we do so only to illustrate the optional nature of the civil service system provided thereunder, not to invalidate that system. The county has, apparently, decided not to exercise its home rule powers to establish an alternate civil service system. That decision is as valid and entitled to recognition by this court as would be the contrary decision. However, the county's decision not to exercise its home rule powers to create an alternate civil service system cannot control the determination whether the civil service system which it has chosen to employ is actually mandated by the legislature. As *Kanellos* clearly reveals, it is not. That being the case, we need not address either AFSCME's or the county's remaining arguments. However, in order to make the bases of our decision as clear as possible, we will address all of the county's arguments.

## THE COUNTY'S REMAINING ARGUMENTS

In further support of the appellate court's decision, the county further notes the direct conflict found by the court between AFSCME's proposal to bargain over the matter at issue and sections 3—14013 and 3—14016 of the Code. 204 Ill. App. 3d at 377.

In citing that "conflict," the county simply begs the essential question before this court, *viz.*, whether the ap-

pellate court correctly held that the conflict which it found between AFSCME's bargaining proposal and the provisions of the Code exempted the county from the duty to bargain imposed by section 7. Merely citing the conflict does nothing to convince us that it did.

The county also notes that this case, unlike *City of Decatur*, does not involve, as an additional consideration supporting a finding of a duty to bargain, the public policy favoring arbitration as a means of public labor dispute resolution.

The county is correct as to the absence here of arbitration as a consideration supporting a finding of a duty to bargain. However, we do not find that distinction a sufficient ground upon which to conclude that *City of Decatur* is not dispositive of the issues here. In noting that this case does not involve arbitration, the county simultaneously ignores the first basis for our decision in *City of Decatur*. That basis, explicitly expressed by the legislature, was the public policy of the State to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection. Ill. Rev. Stat. 1989, ch. 48, par. 1602.

That public policy, as a consideration supporting the finding of a duty to bargain in this case, is as relevant here as it was in *City of Decatur*. When coupled with the optional nature of the civil service system under which the county operates, that public policy sufficiently justifies a finding of a duty to bargain here, notwithstanding the noninvolvement of arbitration in this case. The appellate court erred in ruling to the contrary.

The county also cites this court's holding in *Levin v. Civil Service Comm'n* (1972), 52 Ill. 2d 516, that it is for the legislature to determine whether those who have served as temporary employees for extended periods of

time, like the computer operators in this case, should be given any preferential status in employment. We do not find *Levin* of any avail to the county. The actions of the Cook County civil service commission challenged therein occurred prior to the adoption of the Constitution of 1970. As such, it was presumed, and rightfully so, that the provisions of the Counties Act pursuant to which the county undertook those actions were mandatory upon the county. That presumption is not applicable in this case.

With regard to the temporary status of the employees concerned in this case, the county further argues that the fact that they had become members of its employees' collective-bargaining unit is irrelevant to their civil service status. The county asserts that such membership allows AFSCME to bargain on their behalf only over matters not covered by the civil service commission.

In so arguing, the county again ignores the optional nature of the civil service system it has chosen to employ and, thus, of the rules promulgated thereunder. Because that system and the rules promulgated thereunder are optional and, thus, can be altered, amended or even abandoned at any time, they cannot be held to prevail over the rights of public employees, who, like the three computer operators involved in this case, have become members of a collective-bargaining unit duly authorized by the employees and recognized by the employer.

The county also poses the question whether temporary employees, not required to comply with the prerequisites for certification under its civil service system, would be entitled to the benefits of such certification, such as the protection of the rules dealing with discipline and discharge. This and similar matters we deem a proper subject of the bargaining, which we find the county has a duty to engage in with AFSCME, rather

than a basis for finding no duty to bargain here. The problematic nature of such matters is not sufficient to compel the conclusion that the county has no duty to bargain in this case.

The county next cites *Chicago Bar Association v. County of Cook* (1984), 102 Ill. 2d 438, as directly supportive of the conclusion that any attempt to exempt certain public employees from the examination requirements of its civil service system, even if attempted pursuant to its home rule powers, would nonetheless violate State law.

We now state explicitly what we have previously implied in our discussion of *Kanellos*: it is the very nature of Cook County as a home rule unit of local government which: (1) renders optional in nature the civil service system which the county chose to employ beyond the adoption of the Constitution of 1970; and (2) thus imposes upon it a duty to bargain over the matter at issue in this case. The *Chicago Bar Association* case does not compel, or even support, a contrary conclusion.

In citing that case, the county ignores the basis of this court's holding therein that it could not change, through its home rule and ordinance-making powers, the number of commissioners on the county board of tax appeals or the procedures by which the board made its decisions regarding the assessment of property taxes. The county had passed an ordinance to those effects with the express intent of superseding certain sections of the Revenue Act of 1939. In holding the county's ordinance invalid, this court concluded that the assessment of real estate for tax purposes was not a matter pertaining to the county's local government and affairs within the contemplation of article VII, section 6(a), of the Constitution of 1970. In reaching that conclusion, the court found no distinction between the functions of collecting and assessing taxes which rendered *Bridgman v. Korzen*

(1972), 54 Ill. 2d 74, inapplicable in *Chicago Bar Association*.

In *Bridgman*, this court concluded that the collection of property taxes was not a power or function pertaining to the government and affairs of the county for the reason that, in collecting and distributing tax monies, the county acted both for itself and the other taxing bodies authorized to tax property within the county. Therefore, we reasoned that the collection of taxes did not pertain to the county's government and affairs to any extent greater than to the government and affairs of the other taxing bodies for whose benefit it acted.

The power of the county involved in this case, *viz.*, to adopt civil service provisions differing from those of the Code, whether by altering, amending or even abandoning the latter, is clearly, unlike the powers at issue in the *Chicago Bar Association* and *Bridgman* cases, one which pertains to the government and affairs solely of the county. The exercise of that power would not impact in the slightest manner upon any other unit of local government's control of its government and affairs. The *Bridgman* and *Chicago Bar Association* cases are thus clearly inapposite here.

In arguing that, unlike the civil service system involved in *City of Decatur*, the civil service provisions under which it operates are imposed by the State, the county notes that AFSCME has not demanded that it bargain over the enactment of a home rule civil service ordinance and that, as such, it has no obligation to do so. In this same regard, the county also argues that the enactment of a civil service system by a home rule unit is a matter which falls squarely within the management rights clause of section 4 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1604).

This argument completely misconstrues the holding in *City of Decatur*. We did not hold therein that the city

was obligated to bargain over the enactment of civil service provisions in substitution of those of the Municipal Code. Rather, we held only that, because those provisions did not bind the City of Decatur, it could not rely upon them as preempting the duty to bargain with respect to proposals relating directly to wages, hours or other conditions of employment. Similarly, we do not hold in this case that the county is obligated to engage in collective bargaining with AFSCME over the enactment of civil service provisions in substitution of those enacted pursuant to the Code. Rather, we hold only that the county cannot rely upon those provisions as preempting a duty to bargain over the civil service examination requirement at issue here.

The county also argues that imposing upon it a duty to bargain over that requirement would require it to violate the rule of its civil service commission prescribing the manner in which amendments to the rules are to be made. The county concludes that the duty to bargain provided for in the Act does not require "such attempts to amend" its commission's rules.

In attempting to interpose its civil service commission rules as barring a duty to bargain over the matter involved here, the county has ignored our previous rejection of a narrow reading of section 7 of the Act in *City of Decatur*. In *City of Decatur*, this court observed that "[w]e do not believe that the legislature intended to make the broad duties imposed by the Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment." (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 364.) To the State statutes and local ordinances mentioned in *City of Decatur*, we now add local civil service commission rules as not precluding the broad duty to bargain recognized in section 7.

In view of our conclusion that the county's status as a home rule unit of local government renders the civil service provisions of the Code optional upon it and that, therefore, they do not preclude the recognition of a duty to bargain in this case, we need not address whether the county has that duty under section 15 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 1615), relating to conflicts between the Act's provisions and other laws, executive orders or administrative regulations relating to wages, hours and conditions of employment.

Similarly, in view of the fact that our decision is based solely on the arguments of AFSCME, we need not consider whether, as argued by the County, the Board lacks standing to participate in the appeal to this court.

The judgment of the appellate court is reversed; the decision of the Illinois Local Labor Relations Board is affirmed; the cause is remanded to the Board for further proceedings consistent herewith.

*Appellate court reversed;*
*Illinois Local Labor Relations Board affirmed;*
*cause remanded.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.