NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210428-U

NO. 4-21-0428

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BALL-CHATHAM COMMUNITY UNIT SCHOOL DISTRICT NO. 5, | ) ) | Review of Order of the Illinois Educational Labor |
| Petitioner, | ) | Relations Board |
| v. | ) | |
| THE STATE OF ILLINOIS EDUCATIONAL LABOR | ) | No. 20CA0005C |
| RELATIONS BOARD; and BALL-CHATHAM | ) | |
| EDUCATIONAL ASSOCIATION, IEA-NEA, | ) | |
| Respondents. | ) | |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the Board did not clearly err in finding the Association's grievance was subject to arbitration.

¶ 2     Ball-Chatham Community Unit School District No. 5 (District) seeks direct review of a decision of the Illinois Educational Labor Relations Board (Board) finding the District violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 2018)) when it refused to arbitrate a grievance brought by Ball-Chatham Educational Association, IEA-NEA (Association). The District argues the Board's decision should be reversed because the Board clearly erred in finding the Association's grievance was subject to arbitration. For the reasons that follow, we disagree and affirm.

¶ 3                         I. BACKGROUND

¶ 4     In 2015, the District, an educational employer, and the Association, an employee organization that is the exclusive representative of a bargaining unit of the District's employees,

engaged in collective bargaining negotiations. During the negotiations, the Association, according to a stipulation of facts, "raised initial salary placement for new hires as a bargaining issue," to which "[t]he District's team responded that initial salary was a management prerogative, and one they would not bargain." The negotiations ultimately resulted in a three-year collective bargaining agreement (Agreement), effective from August 2015 to August 2018.

¶ 5        The Agreement contains the following relevant provisions. Article I recognizes the Association as the exclusive representative "for all regularly employed full-time and part-time certified teachers, counselors, librarians, instructional coaches, instructional technology coordinators, speech and language pathologists, social workers, psychologists, and certified school nurses who are paid from the salary schedules attached hereto and made a part here of as Schedules A-1, A-2, and A-3." Schedules A-1, A-2, and A-3, although not part of the record, undisputedly set forth salary schedules based, at least in part, on a staff member's years of service/experience (terms which have been used interchangeably by the parties) and level of education. Article X, in turn, states: "Employees shall be paid in accordance with the salary schedules attached hereto and made a part here of as Schedule A-1 (2015-2016), Schedule A-2 (2016-2017), and Schedule A-3 (2017-2018), each such employee shall move downward one vertical step for each successive year of employment, in which the employee has worked 91+ days. Employees will also move horizontally if applicable." Article V provides: "The [A]ssociation President shall be notified via email of all staffing changes within 7 business days, including newly hired teachers, reassignments, resignations, retirements, and long-term subs. The notification shall include salary schedule placement." Finally, Article II sets forth a grievance procedure that culminates in binding arbitration. It defines a "grievance" as "[a]ny claim by an employee or the Association that there has been an alleged violation, misinterpretation or misapplication of the terms of this Agreement."

¶ 6        On or before August 2017, the District's superintendent recommended hiring several individuals as teachers for the 2017-2018 school year at salaries the superintendent negotiated with the teaching candidates. A number of the candidates agreed to a starting salary "that, based upon their years of teaching in other school districts, was lower than would be paid to a bargaining unit member with the same number of years of experience but with all years having been spent in the District." The District accepted the recommendations from its superintendent and hired the candidates. The District did not give the Association the required notice of staff changes set forth in Article V of the Agreement. Eventually, the Association learned of nine teachers who were hired at the comparatively lower salaries.

¶ 7        In April 2018, the Association submitted a grievance. The Association alleged: "It has come to the attention of the [Association] that teachers are being inappropriately placed on the salary schedule commensurate with their years of experience and/or education." The Association asserted the District "violat[ed], misinterpret[ed], or misapply[ied] [the] terms and conditions of the [A]greement" set forth in Article V, Schedule A-3, and Article I. The Association requested the District place all members on the 2017-2018 salary schedule in accordance with their experience and education, provide back compensation to all affected members, cease and desist from violating the terms and conditions of the Agreement, and apply the Agreement consistently and fairly to all members. Thereafter, the Association and the District engaged in mediation as part of the grievance process. The mediation did not resolve the issues, and arbitration was scheduled for April 2019.

¶ 8        In March 2019, the District informed the arbitrator of an issue of arbitrability. The arbitrator directed the parties to provide written statements on the issue. As part of its written statement, the District conceded it did not give the Association the required notice of staff changes

set forth in Article V of the Agreement. Ultimately, the District took the position the grievance was inarbitrable, and the Association took the position the grievance was arbitrable. The arbitrator directed the parties to adhere to the scheduled arbitration, indicating the issue of arbitrability and the merits of the grievance would be addressed at the arbitration. The District refused to proceed with the arbitration as a method to challenge arbitrability.

¶ 9        In July 2019, the Association filed an unfair labor practice charge against the District, alleging the District violated section 14(a)(1) of Act when it refused to arbitrate the grievance brought by the Association. Both the Association and the District filed position statements. The Executive Director of the Board, following an investigation, issued a complaint, to which the District filed an answer. The Association and the District agreed, as indicated above, to proceed on a stipulation of facts. The District submitted a brief on the stipulation, while the Association elected to stand on its position statement.

¶ 10        With respect to the issue of arbitrability, the Association maintained the complaints in its grievance about the District's failure to give the required notice of staff changes and its failure to appropriately place new hires on the salary schedule were subject to arbitration. The District disagreed, contending (1) the complaint about its failure to give the required notice of staff changes was untimely and (2) the complaint about its purported failure to appropriately place new hires on the salary schedule had no contractual basis, and even if it did, it would violate section 4 of the Act (115 ILCS 5/4 (West 2018)) and sections 10-20.7 and 24-1 of the School Code (Code) (105 ILCS 5/10-20.7, 24-1 (West 2018)) by impeding on exclusive, non-delegable managerial duties related to hiring. In support of its latter contention, the District analogized the placement of new hires on salary schedules with the do not hire designations of probationary teachers found in *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL

118043, ¶¶ 27-29, 69 N.E.3d 809, to be an exclusive, non-delegable managerial duty.

¶ 11     In December 2020, an administrative law judge (ALJ) issued a recommended decision and order, concluding the District violated section 14(a)(1) of the Act when it refused to arbitrate the Association's grievance. In support of its conclusion, the ALJ found, in relevant part, (1) the District had not shown the Association's complaint about the District's failure to give the required notice of staff changes was "conclusively untimely" and (2) the Association's complaint about the District's purported failure to appropriately place new hires on the salary schedule had a contractual basis that did not otherwise conflict with Illinois law. The ALJ ordered the District to proceed with arbitration.

¶ 12     In January 2021, the District filed exceptions to the ALJ's recommended decision and order. In its exceptions, the District did not challenge the ALJ's finding that the dispute concerning the placement of new hires on the salary schedule did not conflict with Illinois law.

¶ 13     In June 2021, the Board issued an opinion and order, concluding the District violated section 14(a)(1) of the Act when it refused to arbitrate the Association's grievance. In support of its conclusion, the Board emphasized the issue before it concerned "a refusal to arbitrate in violation of [s]ection 14(a)(1) of the Act, not a refusal to bargain in good faith in violation of [s]ection 14(a)(5) of the Act." The Board acknowledged the District's refusal to arbitrate served a method to bring the issue of arbitrability before the Board. The Board emphasized "[t]he issue of whether a grievance is arbitrable must be kept separate from an analysis of the merits of the underlying grievance claim."

¶ 14     The Board initially addressed the District's contention that the Association's complaint about the District's failure to give the required notice of staff changes was untimely. The Board declined to entertain the District's contention, finding the issue of timeliness was a

matter for an arbitrator to decide.

¶ 15    The Board then turned to the District's contention that the Association's complaint about the District's purported failure appropriately place new hires on the salary schedule had no contractual basis, and even if it did, it would violate section 4 of the Act and sections 10-20.7 and 24-1 of the Code by impeding on exclusive, non-delegable managerial duties related to hiring.

¶ 16    The Board considered whether the Association's complaint had a contractual basis to subject it to arbitration. In doing so, the Board initially emphasized the general presumption in favor of a finding a complaint is subject to arbitration. The Board then found:

> "In this case, the grievance requested the District place bargaining unit members on the 2017-2018 salary schedule commensurate with actual years of experience and/or education. The District argues that there are no substantive provisions in the [Agreement] regarding initial salary placement. However, Article X of the [Agreement] provides that employees 'shall be paid in accordance with the salary schedules' attached to the [Agreement] and that 'each such employee shall move downward one vertical step for each successive year of employment. Employees will also move horizontally if applicable.' The grievance involving placement on the salary schedule falls within the terms of the [Agreement] because the [Agreement] provides that employees shall be paid in accordance with the salary schedule and acknowledges the possibility of horizontal movement."

¶ 17    The Board also considered whether the subject matter of the Association's

complaint conflicted with Illinois law. While the Board recognized section 4 of the Act and sections 10-20.7 and 24-1 of the Code made educational employers responsible for selecting teachers and setting their salaries, it found those sections did not bar educational employers from allowing employee organizations to be involved in the process of determining initial salaries. In so finding, the Board rejected the District's attempt to analogize the circumstances of this case with those found in *Board of Education of the City of Chicago*. In distinguishing that case, the Board went so far as to find, citing *Monterey Newspapers, Inc.*, 334 N.L.R.B. 128 (2001), "[w]age rates an employer offers to job applicants are mandatory subjects of bargaining because they concern the wages that newly hired employees will be paid."

¶ 18        Thus, the Board found, because the Association's grievance was arbitrable, the District had a duty to arbitrate the grievance, and its failure to do so amounted to a violation section 14(a)(1) of the Act. The Board ordered the District to proceed with arbitration.

¶ 19        Following the issuance of the Board's decision, the District, in accordance with Illinois Supreme Court Rule 335 (eff. July 1, 2017), filed a petition for direct review with this court.

¶ 20                                II. ANALYSIS

¶ 21        Before this court, the District argues the Board's decision finding the District violated section 14(a)(1) of Act when it refused to arbitrate the Association's grievance should be reversed because the Board clearly erred in finding the Association's grievance was subject to arbitration. Both the Board and the Association disagree.

¶ 22                        A. Method to Challenge Arbitrability

¶ 23        Section 14(a)(1) of the Act prohibits "[e]ducational employers, their agents or representatives" from "[i]nterfering, restraining or coercing employees in the exercise of the rights

guaranteed under [the] Act." 115 ILCS 5/14(a)(1) (West 2018). A school district's refusal to submit to binding arbitration under a collective bargaining agreement constitutes a violation of section 14(a)(1). *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 20; see also 115 ILCS 5/1 (West 2018) ("It is the public policy of this State and the purpose of this Act to promote orderly and constructive relationships between all educational employees and their employers."). However, the refusal to arbitrate is an appropriate method to challenge the issue of arbitrability. *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 20; *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 225-26, 526 N.E.2d 149, 154 (1988).

¶ 24                               B. Arbitrability

¶ 25          For a grievance to be arbitrable, (1) there must be a contractual agreement to arbitrate the substance of the dispute and (2) the subject matter of the dispute must not conflict with Illinois law. *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 20; see also 115 ILCS 5/10 (West 2018) ("The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois."). In cases of doubt, there is a presumption in favor of arbitration. *Board of Governors of State Colleges & Universities on Behalf of Northeastern Illinois University (BOG) v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463, 471, 524 N.E.2d 758, 762 (1988). However, a party may not be forced to arbitrate a matter to which that party has not agreed is subject to arbitration. *Id.*; see also *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 22 ("[T]he mere existence of the dispute between the employer and the employee does not make the disputed matter subject to arbitration.").

¶ 26                         C. Standard of Review

¶ 27        The parties assert the Board's finding that the Association's grievance was subject to arbitration should be reviewed under the clearly erroneous standard of review. We agree. To resolve the issue of arbitrability, the Board had to consider the legal effect of a given set of stipulated facts. Consequently, the Board was presented with a mixed question of law and fact. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391, 763 N.E.2d 272, 279 (2001) ("A mixed question of law and fact is one involv[ing] an examination of the legal effect of a given set of facts." (Internal quotation marks omitted.)). "An agency's conclusion on a mixed question of law and fact is reviewed for clear error." *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 16. "An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 68, 77 N.E.3d 625.

¶ 28                         D. Preliminary Matters

¶ 29        Prior to considering the contention of error raised by the District before this court, there are certain preliminary matters we must address.

¶ 30        First, we must address the Association's complaint in its grievance about the District's failure to give the required notice of staff changes set forth in Article V of the Agreement. The Board and Association suggest the District has forfeited any issue concerning the arbitrability of this complaint by failing to raise it on appeal. We agree. During the proceedings below, the District contended the complaint about the failure to give the required notice of staff changes was not subject to arbitration because it was untimely. The Board declined to entertain the District's contention, finding the issue of timeliness was a matter for an arbitrator to decide. Before this

court, the District does not challenge the Board's decision, resulting in forfeiture. See *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54, 143 N.E.3d 925 ("The failure to elaborate on an argument, cite persuasive authority, or present a well-reasoned theory violates [Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020)] and results in forfeiture of the argument."). Therefore, the Board's finding stands, and the Association's complaint in its grievance about the District's failure to give the required notice of staff changes is subject to arbitration.

¶ 31    We must also address the issue of mandatory bargaining. During the proceedings below, the Board, in distinguishing *Board of Education of the City of Chicago*, found, "[w]age rates an employer offers to job applicants are mandatory subjects of bargaining because they concern the wages that newly hired employees will be paid." Before this court, the District complains the Board failed to employ the balancing test from *Central City Educational Ass'n, IEA/NEA v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523, 599 N.E.2d 892, 905 (1992), before finding initial salary placement decisions are subject to mandatory bargaining. While the Association and the Board maintain the Board's finding was correct, they also contend the finding is irrelevant to the issue of arbitrability presented in this case. We agree the finding is irrelevant. As the Board emphasized in its decision, the issue before it did not concern "a refusal to bargain." The issue of whether initial salaries of new hires is a subject of mandatory bargaining is irrelevant to the issue of whether the parties *agreed* to bargain initial salaries. See *Illinois Troopers Lodge No. 41 v. Illinois Labor Relations Board, State Panel*, 2018 IL App (1st) 171382, ¶¶ 39-40, 113 N.E.3d 213 (declining to address whether elements of health insurance were subjects of mandatory or permissive bargaining where the parties agreed to bargaining over the disputed issues). Because the Board's finding is not necessary to our disposition, we express no view on whether initial salary placement decisions are, in fact, subject to mandatory bargaining.

¶ 32 Last, we must address the District's failure to challenge before the Board the ALJ's finding that the dispute concerning the placement of new hires on the salary schedule did not conflict with Illinois law. Before this court, the Board, citing *City of Springfield v. Policemen's Benevolent & Protective Ass'n, Unit #5*, 2021 IL App (4th) 200164, ¶ 60, argues the District's failure to challenge the ALJ's finding results in forfeiture of the issue. We disagree. While the Board could have found the issue forfeited during the proceedings below, it did not do so. Instead, the Board elected to address the issue on the merits. Under these circumstances, we decline to find the issue forfeited. See also *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22, 80 N.E.3d 743 ("[F]orfeiture is a limitation on the parties and not on the appellate court.").

¶ 33                                   E. Contention of Error

¶ 34 Having resolved the preliminary matters, we now turn to the District's primary contention of error before this court: that the Board clearly erred in finding the Association's complaint about the District's failure to appropriately place its members on the salary schedule was subject to arbitration. Specifically, the District asserts the Board clearly erred in finding (1) initial salary placement decisions are within the terms of the Agreement and (2) the involvement of the Association in initial salary placement decisions does not conflict with Illinois law.

¶ 35 We begin with the Board's finding that there was a contractual agreement to arbitrate the substance of the dispute. As indicated above, the Board, in considering this issue, initially emphasized the general presumption in favor of a finding a complaint is subject to arbitration. The Board then, turning the language of the Agreement, found:

"In this case, the grievance requested the District place

bargaining unit members on the 2017-2018 salary schedule

- 11 -

commensurate with actual years of experience and/or education. The District argues that there are no substantive provisions in the [Agreement] regarding initial salary placement. However, Article X of the [Agreement] provides that employees 'shall be paid in accordance with the salary schedules' attached to the [Agreement] and that 'each such employee shall move downward one vertical step for each successive year of employment. Employees will also move horizontally if applicable.' The grievance involving placement on the salary schedule falls within the terms of the [Agreement] because the [Agreement] provides that employees shall be paid in accordance with the salary schedule and acknowledges the possibility of horizontal movement."

¶ 36 After our review, we cannot say the Board's clearly erred in finding initial salary placement decisions are within the terms of the Agreement. Contrary to the District's suggestion, neither the absence of an explicit provision in the Agreement concerning the salary paid to new hires, nor the inclusion of teaching candidates as part of the bargaining unit, precludes a finding that initial salary placement decisions are within the terms of the Agreement. See *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 378, 558 N.E.2d 751, 757 (1990) ("Any exclusion from arbitration must be expressly stated in the contract."). Similarly, the stipulated facts that the District refused to bargain with respect to initial salary placements for new hires after the issue was raised during the collective bargaining negotiations, again highlighted by the District before this court, also does not preclude a finding that initial salary placement decisions are within the terms of the Agreement. As the

Association acknowledges, these matters may, however, be relevant during the arbitrator's analysis of the merits of the grievance. See *Rock Island County Sheriff Grchan v. American Federation of State, County & Municipal Employees, AFL-CIO, Local 2025, Council 31*, 339 Ill. App. 3d 295, 298, 791 N.E.2d 57, 60 (2003) ("The issue of whether the law requires arbitration must be kept separate from an analysis of the merits of the underlying claim."). It is ultimately for the arbitrator to decide whether the parties intended for newly hired teachers to be placed on the salary schedule commensurate with their years of service/experience and education.

¶ 37      We turn next to the Board's finding that the subject matter of the dispute did not conflict with Illinois law. As indicated above, the Board, in considering this issue, recognized section 4 of the Act and sections 10-20.7 and 24-1 of the Code made educational employers responsible for selecting teachers and setting their salaries but found those sections did not bar educational employers from allowing employee organizations to be involved in initial salary placement decisions. The Board also found the District's attempt to analogize the circumstances of this case with those found in *Board of Education of the City of Chicago* to be unconvincing.

¶ 38      Again, we cannot say the Board clearly erred in finding the involvement of employee organizations with initial salary placement decisions did not conflict with Illinois law. Before this court, the District maintains any involvement by an employee organization in such matters violates section 4 of the Act and sections 10-20.7 and 24-1 of the Code by impeding on the District's exclusive, non-delegable managerial duties related to hiring. We disagree. As the Board found, it is undisputed educational employers are responsible for the selection of teachers and setting their salaries. 115 ILCS 5/4 (West 2018) ("Employers shall not be required to bargain over *** [the] selection of new employees."); 105 ILCS 5/10-20.7 (West 2018) (providing it is the responsibility of school boards to "appoint all teachers and fix the amount of their salaries"); 105

ILCS 5/24-1 (West 2018) ("School boards shall appoint all teachers, determine qualification of employment and fix the amount of their salaries."); see also *Board of Education of School District No. 189 v. Cahokia District Council No. 58*, 93 Ill. App. 3d 376, 378-79, 417 N.E.2d 151, 153 (1981) (noting school boards have an exclusive duty "to set and allocate funds for [teacher] salaries"). However, those responsibilities do not bar educational employers from allowing employee organizations to be involved with initial salary decisions. The District also, as it did in the proceedings below, attempts to analogize an initial salary decision with a do not hire designation of a probationary appointed teacher, which the supreme court found in *Board of Education of the City of Chicago*, 2015 IL 118043, ¶¶ 27-29, to be an exclusive, non-delegable managerial duty. We find, as did the Board, the two are not analogous. Ultimately, the District has not cited, nor has this court found, any case holding educational employers and employee organizations cannot lawfully bargain for and contractually fix salary amounts for new hires.

¶ 39 In summary, we conclude the Board did not, as the District contends, clearly err in finding the Association's grievance was subject to arbitration. We therefore affirm the Board's decision finding the District violated section 14(a)(1) of the Act when it refused to arbitrate the grievance brought by the Association.

¶ 40 F. Final Matter

¶ 41 As a final matter, the Board and the Association objected to this court relying on any facts established solely through the District's position statement and accompanying material as those materials were outside the administrative record. The District, in response, encouraged this court to apply the reasoning from *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 25-26, 883 N.E.2d 29, 33 (2007), as we did in *Lane v. Village of Heyworth*, 2019 IL App (4th) 180488, ¶ 16, 133 N.E.3d 1282, and

consider the materials. Regardless of whether the position statement and accompanying material could have been considered, they were not properly made part of the record—they are simply included in the appendix of the District's opening brief. As this court has repeated, " 'attachments to briefs cannot be used to supplement the record, and this court cannot consider evidence that is not part of the record.' " *In re R.M.*, 2022 IL App (4th) 210426, ¶ 21 (quoting *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 35, 74 N.E.3d 1058). Therefore, this court did not rely on any facts established solely through the District's position statement and accompanying material in reaching this decision.

¶ 42                                III. CONCLUSION

¶ 43        We affirm the Board's decision.

¶ 44        Affirmed.